**PICCUTA LAW GROUP, LLP**
Charles Tony Piccuta, Esq. (#258333)
Charles Albert Piccuta, Esq. (#56010)
400 West Franklin Street
Monterey, CA 93940
Telephone: (831) 920-3111
Facsimile:  (831) 920-3112
charles@piccutalaw.com

Attorneys for Plaintiff
John F. Dunham

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN F. DUNHAM, | CASE NO.: 18-cv-04467-EDL |
| Plaintiff, | **PLAINTIFF'S FIRST AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983** |
| v. | |
| COUNTY OF MONTEREY, a local governing body; SHANNON ANADON, JUSTIN HOLLOWAY, JOSHUA D. GARDEPIE, REANNA R. LILGA, ALY H. NAJEM, ZACHARIAH SWIFT, JASON SULLIVAN and CAMERON S. VON DOLLEN, individually; CALIFORNIA FORENSIC MEDICAL GROUP, INC., a California corporation; and DOES 1 through 20, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, John F. Dunham ("Plaintiff" or "Mr. Dunham"), by counsel, alleges as follows:

## **INTRODUCTION**

This action arises from the unlawful use of force and deliberate indifference to serious

medical needs by employees of the California Forensic Medical Group ("CFMG") and officers

of the Monterey County Sheriff's Office.  For approximately three days, Mr. Dunham, a pre-trial

detainee at the Monterey County Jail, was forced to suffer from severe alcohol withdrawal,

which was left untreated and caused the onset of delirium tremens—***a life-threatening medical***

***emergency***.  Instead of sending medical and mental health personnel to attend to Mr. Dunham

and administer emergent medical care as required, Deputy Sheriffs entered his cell and beat him violently and tased him. Mr. Dunham's resulting injuries were severe. He was rushed to the Emergency Department of Natividad Medical Center accordingly.  There he was treated not only for the resulting injuries, but also for severe alcohol withdrawal (also referred to as "delirium tremens" herein).

The acts and inaction of Defendants deprived Mr. Dunham of his rights under the First and Fourteenth Amendments of the United State Constitution.  Such violations of Mr. Dunham's rights were a highly predictable outcome of the failures of the Monterey County Sheriff's Office and of CFMG to properly train their employees.  Mr. Dunham is suing the County and CFMG under *Monell* and the remaining defendants in their individual capacities.  He is seeking a judgment for an award of compensatory and punitive damages as allowed by law.

## JURISDICTION AND VENUE

1.    This action arises under 42 U.S.C. § 1983, conferring jurisdiction upon this Court under 28 U.S.C. §§ 1331 and 1343.

2.    A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the County of Monterey, California.  As a result, 28 U.S.C. § 1391(b) confers venue upon this Court.

## INTRADISTRICT ASSIGNMENT

3.    Pursuant to Civil L.R. 3-2(c) and 3-5(b), this action shall be properly brought in the San Jose Division or to the San Francisco Division per the District's decision on intra-district rebalancing.

## PARTIES

4.    Plaintiff, John F. Dunham, is a natural person and resident of the State of California.  At the time of the conduct giving rise to this lawsuit, Mr. Dunham was a pre-trial detainee.

5.      Defendant, Monterey County, is a California municipality, duly organized and existing under the laws of the State of California.  It is the owner and legal entity responsible for operating the Monterey County Jail, which it does through the Monterey County Sheriff's Office.

6.      Each of the following defendants are being sued in their individual capacities: Shannon H. Anadon ("Anadon"), Joshua D. Gardepie ("Gardepie"), Justin Holloway ("Holloway"), Reanna R. Lilga ("Lilga"), Aly H. Najem ("Najem"), Jason Sullivan ("Sullivan"), Zachariah Swift ("Swift") and Cameron S. Von Dollen ("Von Dollen").

7.      At all relevant times, the individual defendants identified in paragraph 5, above, were employed by the County of Monterey in the State of California.  Specifically, Anadon was employed as a Sheriff's Sergeant; all other Defendants were employed as Deputy Sheriffs. While engaged in the conduct described herein, the individual defendants were acting under the color of state law and in the course and scope of their employment with the County of Monterey.

8.      Defendant, California Forensic Medical Group, Inc. ("CFMG"), was at all time mentioned herein a California corporation organized under the laws of the State of California. At all relevant times, CFMG provided medical and mental health services at the Monterey County Jail pursuant to a contract with Monterey County.  On information and belief, CFMG and its employees and agents were responsible for making and enforcing policies, procedures and training related to the medical and mental health care of prisoners and detainees in the Monterey County Jail.  Those responsibilities included assessing inmates for alcohol withdrawal and potential alcohol withdrawal, safe detoxification of alcohol dependent inmates, and preventing and treating alcohol withdrawal.

9.      Plaintiff is ignorant of the true names and capacities of Defendants, Does 1 through 20, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes that each Doe Defendant, at all relevant times, was employed by

Monterey County or by CFMG.  Further, that at all times mentioned herein, the Doe Defendants were acting under color of state law and in the course of scope of their employment.  The reason these names are not yet known or ascertainable is that Plaintiff has not yet completed formal discovery.  The necessary Monterey County and CFMG employee personnel information will be sought in discovery.  Upon ascertaining the true identifies of Does 1 through 20, Plaintiff will amend his Complaint or seek leave to do so to add the defendants.

## STATEMENT OF FACTS

10.     On August 20, 2016, Mr. Dunham was arrested and booked into the Monterey County Jail.

11.     At the time of his arrest, Mr. Dunham was intoxicated, suffering from alcohol withdrawal and/or at a high risk for withdrawal.  He was fighting alcohol addiction and habitually consumed approximately 2 Liters of liquor per day.

12.     According to Mr. Dunham's Pre-Booking Sheet, he appeared unkempt, he was talkative, and his demeanor was irrational.

13.     In addition to the Pre-Booking Sheet, a Pre-Classification Intake Screening Questionnaire was completed by Defendant Von Dollen, who interviewed Mr. Dunham.  Despite Mr. Dunham's severe alcohol problem and irrational demeanor, Defendant Von Dollen noted that Mr. Dunham showed no signs of drug or alcohol use.   Further, Von Dollen failed to check the boxes for Medical Problem or Psychological Impairment.  In fact, Von Dollen made no comments at all in the space provided for general observations.

14.     Defendant Lilga also interviewed Mr. Dunham and documented the results in a Medical Intake Questionnaire form.  In response to the question of whether the arrestee was awake, talking and able to walk in without assistance, Lilga checked the box, "No."  However, regarding the questions of whether the arrestee appeared under the influence of drugs or alcohol, or whether the arrestee's behavior suggested a danger to self or others, Lilga also marked "No."

15.     On information and belief, contrary to Jail and CFMG policies and procedures, Mr. Dunham's intake screenings were not performed by CFMG personnel but by Deputy Sheriffs.  On further information and belief and also contrary to Jail and CFMG policies and procedures, Mr. Dunham did not receive an initial health assessment by an intake nurse or any other CFMG medical or mental health personnel.

16.     On information and belief, during Mr. Dunham's intake screening and at all times up until the use of excessive force alleged herein, Defendants ignored symptoms indicating that Mr. Dunham was intoxicated, suffering from withdrawal and/or at a high risk for withdrawal. Further, on information and belief, at no time did any Defendant follow-up on Mr. Dunham's symptoms to determine his need for treatment of alcohol withdrawal.

17.     On information and belief, at no time did Defendants place Mr. Dunham in a CIWA (Clinical Institute Withdrawal Assessment for Alcohol) protocol, check his blood alcohol content or perform any other laboratory tests.  Further, no medication nor any other treatment was provided to prevent or treat alcohol withdrawal, including severe alcohol withdrawal (also referred to herein as "delirium tremens"), which is a life-threatening medical emergency.  These failures were contrary to Jail and CFMG policies and procedures given Mr. Dunham's severity of alcohol withdrawal.

18.     In the days following his arrest, Mr. Dunham's alcohol withdrawal caused the onset of delirium tremens, from which he was suffering at the time of the use of excessive force as alleged herein.  At no time up until and including the onset of delirium tremens did Defendants acknowledge and treat Mr. Dunahm's condition as required by Jail and CFMG policies and procedures.

19.     By the night of August 23, 2016, Mr. Dunham was displaying clear signs of untreated severe alcohol withdrawal.  His symptoms included hallucinations, severe anxiety, disorientation to time and place and incoherent mumbling.  During this time, contrary to alcohol

withdrawal protocol, Mr. Dunham was housed in general population and remained untreated. Due to the discomfort and dehydration caused by alcohol withdrawal, Mr. Dunham told deputies repeatedly to get him a bed roll and a cup for water. The deputies interpreted these requests as obnoxious demands and eventually decided they had heard enough from Mr. Dunham.

20.     At approximately 9:00 p.m. on August 23, 2016, Defendants finally responded to Mr. Dunham's clear display of signs of severe alcohol withdrawal and demands.  Defendant Najem was the first Deputy to acknowledge Mr. Dunham's condition.  However, instead of calling medical or mental health personnel, Najem summoned Defendant Sullivan to assist him in dealing with Mr. Dunham.  Over the next several minutes, Defendants Swift, Gardepie, Holloway and Anadon also arrived at Mr. Dunham's cell.

21.     Given Mr. Dunham's life-threatening medical condition, express protocol dictated that Mr. Dunham be taken for treatment to the OPHU (Out-Patient Housing Unit) or Natividad Medical Center.  However, the Sergeant and five Deputy Sheriffs instead confronted Mr. Dunham with the alleged intention of taking him to a different cell for his "safety".

22.     When Defendants encountered Mr. Dunham, he was sweating, confused and disoriented.  In his hallucinogenic state, he also requested his phone, a shovel, a hammer and to speak to women who were not known or present.  Defendant Najem responded by throwing Mr. Dunham to the ground and delivering knee strikes to his back and elbow strikes to his head while Defendant Holloway held Mr. Dunham down.  Defendant Gardepie also helped pin Mr. Dunham down while Defendant Sullivan delivered hand strikes to Mr. Dunham's head.  While Mr. Dunham was pinned to the ground and being stuck by multiple Deputies, Defendant Swift tasered Mr. Dunham.  During the beating, Mr. Dunham's head was also slammed into and gashed open on a metal plate sticking out from the wall or the concrete bolts sticking up from it. Defendant Anadon arrived during the attack on Mr. Dunham but did not intervene.

///

23.     Attached collectively as **Exhibit A** are three photos showing the injuries to Mr. Dunham caused by the violent attack. Attached as **Exhibit B** is a photo showing the amount of Mr. Dunham's blood that was left on the floor as a result of the attack.

24.     Once Mr. Dunham was in restraints, medical personnel were summoned due to the injuries inflicted on him by the Deputies.   However, medical staff were not, nor were they at any time, called to treat Mr. Dunham's delirium tremens.

25.     Mr. Dunham was eventually removed from his cell and taken to the Jail infirmary. He was then transported by American Medical Response to the Natividad Medical Center Emergency Department.

26.     When the EMTs arrived at the Jail, Mr. Dunham exhibited several lacerations and extensive edema to his face.  He was also hallucinating and asking for beer he believed was near him and for people that were not there.  Though he was shaking, delirious and agitated, Mr. Dunham was cooperative and placed on a gurney without incident.

27.     During this limited contact with Mr. Dunham, one of the EMTs documented that Mr. Dunham may have delirium tremens—a condition that personnel at the Jail had failed to acknowledge and treat.

28.     Mr. Dunham was admitted to the Emergency Department at 10:08 p.m. on August 23, 2016.  He presented with multiple lacerations to his face and scalp and swelling to his face. Mr. Dunham was also actively hallucinating with delusional ideation and hand tremors.  Medical personnel immediately documented that he appeared to be suffering from delirium tremens.

29.     CT scans of Mr. Dunham's head and spine were taken.  Mr. Dunham required 6 mg/kg of ketamine to sedate him enough to obtain minimally adequate scans of his head, face and neck.  The scans revealed a right maxillary anterior wall fracture.

30.     Medical personnel at Natividad also had to sedate Mr. Dunham with Ativan before they could treat his wounds, which were contaminated.  Eventually, his lacerations were

irrigated and cleansed.  Mr. Dunham's scalp lacerations had to be stapled.  A large laceration below his right eye had to be closed with eight sutures; an upper lip laceration with one suture; and a chin laceration with three sutures.

31.     In addition to his head injuries, Mr. Dunham was diagnosed with paranoid psychosis and severe alcohol withdrawal delirium. He also chipped multiple teeth and was concussed during the attack.

32.     At Natividad, Mr. Dunham was also assigned a CIWA score of 51.  According to protocol at the Monterey County Jail, a score of 15 or greater places a person in the highest, most severe level on the Alcohol Withdrawal Scale.

33.     Given Mr. Dunham's CIWA score, according to Jail and CFMG policies and procedures, Mr. Dunham should have been housed in OPHU on medical observation status or at Natividad at the time he was beaten.

34.     On August 24, 2016, Mr. Dunham was discharged from the Emergency Department, but did not return to the Jail.  He remained at Natividad and was admitted for acute alcohol withdrawal.  His condition was so severe that medical personnel had difficulty controlling his symptoms with benzodiazepines in the Emergency Department.  As a result, he was admitted to the ICU to start on a Precedex drip.  Mr. Dunham's plan of treatment also included regular CIWA checks, ICU Valium protocol to prevent seizures, and thiamine and folate supplementation.  Mr. Dunham's treatment at Natividad continued until his discharge on August 27, 2016.

35.     Defendants' improper use of force and deliberate indifference to serious medical needs caused Mr. Dunham to suffer past and future disability, disfigurement and loss of enjoyment of life; past and future physical pain, mental suffering and emotional distress; and past and future necessary medical care, treatment and services.  The resulting harm to Mr. Dunham included not only severe head and face injuries, but also days of suffering through

untreated alcohol withdrawal so severe that it caused the onset of delirium tremens, a life-threatening medical emergency.

36.     Defendants' conduct was driven by an evil motive or intent, or, at the very least, was engaged in with malice and involved a reckless or callous indifference to Mr. Dunham's constitutional rights.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Deprivation of Right to Free Speech Under the First Amendment**
**(Against Defendants Anadon, Gardepie, Holloway, Najem,**
**Swift, Sullivan and Does 1 through 20)**

37.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

38.     Defendants acted under color of state law while engaged in the conduct complained of herein, which deprived Mr. Dunham of his rights under the First Amendment of the United State Constitution.

39.     Mr. Dunham's speech at the Monterey County Jail was a constitutionally protected activity, namely the right to freedom of speech protected by the First Amendment including the right of Mr. Dunham to repeatedly request that the he be provided a bed roll and a cup for water.

40.     Defendants' use of force and failure to intervene, as alleged herein, was because of Mr. Dunham's protected activity.

41.     Such conduct by Defendants chilled Mr. Dunham's exercise of his First Amendment rights.

42.     The beating of Mr. Dunham, and failure to intervene, did not reasonably advance a legitimate correctional goal.

43.     Defendants' conduct was the actual and proximate cause of Mr. Dunham's injuries.

///

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive Force Under the Fourteenth Amendment
### (Against Defendants Anadon, Gardepie, Holloway, Najem, Swift, Sullivan and Does 1 through 20)

44.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 43 as though fully set forth herein.

45.     Defendants acted under color of state law while engaged in the conduct complained of herein, which deprived Mr. Dunham of his due process rights under the Fourteenth Amendment of the United State Constitution.

46.     The use of force by Defendants as alleged herein amounted to a seizure of Mr. Dunham's person.

47.     Defendants' use of force and failure to intervene were intentional.

48.     The force used against Mr. Dunham was objectively unreasonable.  It amounted to punishment of a pretrial detainee, was not rationally related to a legitimate governmental action or was excessive in relation to that purpose.

49.     Defendants' conduct was the actual and proximate cause of Mr. Dunham's injuries.

## THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Deliberate Indifference to Serious Medical Needs Under the Fourteenth Amendment
### (Against Defendants Anadon, Gardepie, Holloway, Lilja, Najem, Swift, Sullivan, Von Dollen and Does 1 through 20)

50.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 49 as though fully set forth herein.

51.     Defendants acted under color of state law while engaged in the conduct complained of herein.  Such conduct deprived Mr. Dunham of his right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment of the United State Constitution.

52.     Mr. Dunham faced a serious medical need to which Defendants were deliberately indifferent.

53.     Defendants' conduct was the actual and proximate cause of Mr. Dunham's injuries.

### FOURTH CLAIM FOR RELIEF
#### 42 U.S.C. § 1983 – *Monell*
**Deliberate Indifference to Serious Medical Needs Under the Fourteenth Amendment**
**(Against Defendants County of Monterey and California Forensic Medical Group)**

54.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 53 as though fully set forth herein.

55.     Defendants acted under color of state law while engaged in the conduct complained of herein.  Such conduct deprived Mr. Dunham of his right to be free from deliberate indifference to his serious medical needs while in custody as a pretrial detainee, as secured by the Fourteenth Amendment of the United State Constitution.

56.     The training policies of Monterey County and CFMG were not adequate to prevent violations by their employees of the constitutional right of inmates, including Mr. Dunham, to be free from deliberate indifference to serious medical needs.  Nor were they adequate to train said employees to handle the usual and recurring situations with which they were required to deal, including inmates suffering from alcohol withdrawal or at a high risk of alcohol withdrawal.

57.     Defendants, Monterey County and CFMG, were deliberately indifferent to the substantial risk that their policies were inadequate to prevent constitutional violations by their employees, including deliberate indifference to serious medical needs.  Defendants were further deliberately indifferent to the obvious or known consequences of their failure to train their employees.

///

58.     The failure of Monterey County and CFMG to prevent violations of law by their employees and to provide adequate training caused the deprivation of Mr. Dunham's right to be free from deliberate indifference to serious medical needs.

59.     Defendants' conduct was the actual and proximate cause of Mr. Dunham's injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Dunham demands judgment in his favor and against Defendants, and each of them, jointly and severally as allowed by law, as follows:

A.     For compensatory damages in an amount according to proof at trial;

B.     For punitive damages in an amount sufficient to punish and deter according to proof at trial;

C.     For pre-judgment interest pursuant to law;

D.     For costs and attorney's fees as allowed by law; and

E.     For such other relief as the Court deems just and proper.

Dated: __May 29, 2019__                          **PICCUTA LAW GROUP, LLP**

/s/_____*C.T. Piccuta*_____

Charles Tony Piccuta
Attorney for Plaintiff
John F. Dunham

## JURY TRIAL DEMAND

Plaintiff, by counsel, pursuant to Fed. R. Civ. P. 38 and Civil L.R. 3-6, demands a trial by jury on all issues so triable.

Dated: __May 29, 2019____                          **PICCUTA LAW GROUP, LLP**

/s/_____*C.T. Piccuta*_____

Charles Tony Piccuta
Attorney for Plaintiff
John F. Dunham

COUNTY 000018



EXHIBIT A,   P.1

COUNTY 000019



EXHIBIT A,   P.2



COUNTY 000020

EXHIBIT A,   P.3



COUNTY 000022

EXHIBIT B,   P.1